United States District Court
Southern District of Texas
ENTERED
October 07, 2026
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

GALVESTON DIVISION

No. 3:26-cr-27-1

UNITED STATES OF AMERICA

v.

ALI HOMOUD ALNAIMI

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is the defendant's opposed motion to revoke the magistrate judge's detention order and set conditions of release. Dkt. 27. The defendant, Ali Homoud Alnaimi, was indicted for transportation of child pornography. Dkt. 21. After considering evidence during two detention hearings, the magistrate judge ordered the defendant detained. Dkt. 15. For the reasons explained below, the court denies the defendant's motion and affirms the magistrate judge's detention order.

### I. Background

On July 18, 2026, Alnaimi was detained and searched while leaving a cruise ship in Galveston. Dkt. 1-2 ¶¶ 4–5. After numerous videos depicting

child pornography were found on his phone, Alnaimi was arrested and charged with transportation of child pornography. *Id.* ¶ 6; 18 U.S.C. § 2252A(a)(1). Arresting agents seized his Qatari passport. Dkt. 14-2 at 1.

On July 20, Magistrate Judge Dena H. Palermo ordered the defendant to be temporarily detained pending a hearing on pretrial release. Dkt. 5.

On July 29, Magistrate Judge Christina A. Bryan held a hearing on whether to grant Alnaimi pretrial release on bond. Dkt. 8. During the hearing, the parties established: (1) Alnaimi is a citizen of Qatar, dkt. 27-1 at 4; (2) Alnaimi's general visa to enter the U.S. expires in 2031, *id.* at 57:4–11, and the visa for his current trip expires on December 11, 2026, *id.* at 57:12–20; (3) Alnaimi has no prior criminal history, *id.* at 54:2–22; (4) Alnaimi has worked for the Qatari Football Association since 2007, *id.* at 9; (5) Alnaimi did not resist arrest and was "very polite" and respectful, dkt. 27-1 at 52:15–17; (6) Alnaimi frequently travels, *id.* at 44:15–21; (7) and—according to testimony proffered from ten Qatari citizens—Alnaimi is peaceful and is likely to appear at all court proceedings. *Id.* at 67:11–71:14.

The defense proposed that Khalid Abdullah—a U.S. and Qatari citizen—be Alnaimi's third-party custodian. *Id.* at 67:15–73:4. Abdullah met the defendant once, three years ago. *Id.* at 72:19–20. Abdullah was unable to corroborate the defendant's personal, familial, or demographic information.

Dkt. 14-2 at 2.

For the conditions of release, the defense proposed that:

- Abdullah would be the defendant's custodian;
- Alnaimi would reside at—and be restricted to the interior of—Abdullah's home;
- Alnaimi would wear a GPS monitor at all times;
- Abdullah would password-protect all electronic devices in his home and not give any password to Alnaimi;
- Alnaimi could obtain a phone with no internet capacity to call his family in Qatar and communicate with the Qatari Embassy and his attorneys;
- Alnaimi could leave Abdullah's residence only for legal reasons, medical reasons, or religious services; and
- Abdullah and Alnaimi's brother would sign as co-sureties on a two-million-dollar bond and deposit $200,000 in cash with the court.

Dkt. 27-1 at 77:1–78:5.

The Qatari Embassy in Washington, D.C. also submitted a letter proposing additional conditions of release. The Deputy Chief of Mission committed that if Alnaimi were released, the embassy would:

- Receive regular reports from Abdullah;
- Pay Alnaimi's living and medical expenses;
- Communicate at least weekly by telephone with Abdullah or Alnaimi;
- Guarantee Alnaimi's compliance with all conditions of release, "including any restrictions on his movements or access to communications devices or media, requirements with respect to court appearances or reporting, and his appearance at trial"; and
- Guarantee payment of Alnaimi's bond.

*Id.* at 75:1–76:7.

Judge Bryan ordered temporary detention while she confirmed the adequacy of the proposed conditions of release. *Id.* at 90:18–19. She wanted assurance that the Qatari Embassy would (1) guarantee a two-million-dollar bond and (2) bar the defendant from entering the Qatari Consulate to seek prosecutorial immunity from the U.S. *Id.* at 91:15–18.

On July 31, at the second detention hearing, Judge Bryan concluded that release was not appropriate because the court had no authority to force a sovereign government to comply with the conditions of release. *Id.* at 100:19–101:8. In brief rebuttable, the defense offered evidence of the U.S.'s longstanding relationship with Qatar. *Id.* at 101:19–103:8.

On August 18, Alnaimi moved to set aside the detention order and to set conditions of release. Dkt. 27. That motion is now before the court.

In support of the motion, the Deputy Chief of Mission of the Embassy of Qatar in Washington, D.C., sent a letter to the court. Along with committing to deliver a cash bond of $2,000,000, the embassy stated that:

> The Embassy reaffirms its commitment that it will instruct the officers of its diplomatic mission and all Qatari consulates in the United States that Mr. Alnaimi shall not be permitted to enter under any circumstances. If, despite those measures, Mr. Alnaimi succeeds in entering a diplomatic mission or consulate, he will be removed immediately by mission or consular officers. If he resists removal, the Embassy will request local law enforcement officers to remove him. The Embassy irrevocably consents to permit law enforcement officers to enter its diplomatic missions or consulates for the limited purpose of removing Mr. Alnaimi if he enters.

Dkt. 27-1 at 110.

## II. Standard of Review

If a magistrate judge orders a defendant to be detained, the defendant "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b).

A district court reviews *de novo* a magistrate judge's order regarding conditions of pretrial release and makes an independent determination on whether pretrial release is appropriate. *United States v. Westbrook*, 780 F.2d 1185, 1188 n.4 (5th Cir. 1986). The district court need not hold an additional

evidentiary hearing. *See United States v. Anderson*, No. 3:14-CR-210-D(08), 2014 WL 2764747, at *1 n.2 (N.D. Tex. June 18, 2014). The court may rule based on the original detention hearing and any additional information provided by counsel. *Id.*

## III. Legal Standard

Under the Bail Reform Act, a judicial officer shall release a defendant pending trial unless there is no set of conditions that would "reasonably assure" that the defendant will appear in court and not endanger the community. *See* 18 U.S.C. § 3142(a)–(c).

If the alleged crime involves a minor victim, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *Id.* at § 3142(e)(3)(E). Rebutting this presumption requires sufficient evidence that the defendant is not a flight risk or a danger to the community. *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). The defendant bears a limited burden of production—not persuasion—to rebut this presumption. *Id.* The government has the ultimate burden of persuasion. *United States v. Bosquez-Villarreal*, 868 F.2d 1388, 1389 (5th Cir. 1989).

If the defendant successfully rebuts this presumption, the government

must either prove—by a preponderance of the evidence—that no conditions of release can "reasonably assure" the defendant's appearance or prove—by clear-and-convincing evidence—that no conditions can "reasonably assure" the safety of the community. *United States v. Marcano*, No. 4:24-mj-00142-3, 2024 WL 1580191, at *1 (S.D. Tex. April 11, 2024).

When weighing whether there are conditions of release that will "reasonably assure" the appearance of the person and the safety of the community, the court "shall . . . take into account" four statutory factors:

1. "The nature and circumstances of the crime charged, including whether the offense . . . involves a minor victim;
2. The weight of the evidence against the person;
3. The history and characteristics of the person, including—
    a. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    b. whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence

for an offense under Federal, State, or local law; and

4. the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

18 U.S.C. § 3142(g).

## IV. Discussion

The United States asks the court to deny the defendant's motion for pretrial release for three reasons: (1) a rebuttable presumption applies for detainment because there is probable cause that the defendant transported child pornography; (2) the defendant is a flight risk; and (3) the defendant is a danger to his community. The court will address each argument in turn and account for the four statutory factors listed above as relevant.

### A. The Defendant Produced Sufficient Evidence to Rebut the Presumption Under 3142(e)(3)(E)

Both parties agree that there is probable cause to find that Alnaimi committed transportation of child pornography under 18 U.S.C. 2252A(a)(1). Dkt. 27-1 at 36:10–7. Accordingly, a rebuttable presumption applies that no conditions exist which would reasonably assure the appearance of Alnaimi and the safety of the community. S*ee* 18 U.S.C. § 3142(e)(3)(E) (listing section 2252A(a)(1) as an offense involving a minor victim to which the presumption applies).

Even so, Alnaimi produced sufficient evidence to rebut this

presumption. He proffered the testimony of ten individuals that he would appear at all future court appearances and that he is not violent or dangerous. Dkt. 27-1 at 67:11–71:14. Alnaimi also offered evidence of being a law-abiding, Qatari citizen. He has worked for the Qatar Football Association since 2007, *id.* at 9; he has no criminal history in Qatar, *id.* at 54:2–22; and he entered the United States on a valid visa, *id.* at 57:12–20. Additionally, the defense proposed conditions of release that would effectively nullify any danger Alnaimi might pose to the community: Alnaimi would be GPS-monitored at all times, confined to the interior of Mr. Abdullah's house, and banned from using any device with internet access. *Id.* at 77:1–78:5; *see United States v. Marcanov*, No. 4:24-mj-00142-3, 2024 WL 1580191, at *3 (S.D. Tex. April 11, 2024) (finding "that strict conditions—home detention, an ankle monitor, and a third-party custodian—are sufficient to alleviate any danger [the defendant, who was charged with violence against a minor,] poses to society").

Because the defendant bears only "a limited burden of production, not a burden of persuasion," this evidence sufficiently rebuts the presumption that Alnaimi should be detained. *Hare*, 873 F.2d at 798.

**B. Risk of Flight**

Because Alnaimi rebutted the presumption, the burden shifts to the

government to show by a preponderance of the evidence that Alnaimi is a flight risk. *See Fortna*, 769 F.2d 243, 250 (5th Cir. 1985) (describing the inquiry as whether "it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance"). The government argues that the proposed conditions of release—including the Qatari Embassy's guarantees—will not reasonably assure the defendant's appearance at trial. Dkt. 30 at 6–7. The court agrees.

Alnaimi lacks meaningful ties to the United States. *See* 18 U.S.C. § 3142(g)(3)(A) (directing the court to consider a defendant's "history and characteristics[,]" including his "length of residence in the community" and "community ties"). A defendant's ties to the locality must be the "sort of family ties from which we can infer that a defendant is so deeply committed and personally attached that he cannot be driven from it by the threat of a long prison sentence." *United States v. Rueben,* 974 F.2d 580, 586 (5th Cir. 1992); *see United States v. Trosper*, 809 F.2d 1107, 1110 (5th Cir. 1987).

Alnaimi has no family in the United States. His wife, brother, and children live in Qatar. Dkt. 14-2 at 3; *see United States v. Almasri*, No. H-07-155, 2007 WL 2964780 at *1–2 (S.D. Tex. Oct. 10, 2007) (concluding that a defendant's extensive family and financial ties to Lebanon weighed in favor of detention). Alnaimi has neither lived in the United States for an extended

time nor formed relationships with U.S. citizens—apart from his proposed third-party custodian, Abdullah, whom he met only once three years ago. Dkt. 27-1 at 72:19–20. Further, Abdullah was unable to verify personal, familial, or demographic information about the defendant. Dkt. 14-2 at 2; *see United States v. Stanford*, 630 F. Supp. 2d 751, 756 (S.D. Tex. 2009) (discrediting "ties to the area [that] are illusory and made in order to secure pretrial release on bond"). Moreover, the defendant's recent visits to the United States appear to have been only for his work with the Qatari Football Association. Dkt. 27-1 at 43:19–44:7; *see United States v. Boado*, 835 F. Supp 920, 923 (E.D. Tex. 1993) (weighing the "sporadic and vague nature of [the defendant's] business ties in the United States" in favor of detention).

Alnaimi's extensive travels around the world further increase his risk of flight. Within the last five years, the defendant has traveled to Switzerland, Kuwait, Saudi Arabia, Malaysia, the United Kingdom, France, and Jordan. Dkt. 14-2 at 2–3; *see Stanford*, 630 F. Supp. 2d at 756 (finding that the defendant's "longterm residence is Antigua and his frequent travels across the globe and to multiple foreign countries belie his contention that he has strong ties to Houston"). The authorities' seizure of Alnaimi's passport "constitute[s] no additional assurance [that he will appear at court proceedings], since a passport is not needed to leave the United States." Dkt.

14-2 at 1; *United States v. Kostadinov*, 572 F. Supp. 1547, 1552 (S.D.N.Y.), *aff'd*, 721 F.2d 411 (2d Cir. 1983).

Alnaimi's potential sentence also increases his flight risk. *See* § 3142(g)(1) (directing courts to consider the "nature and circumstances of the offense charged"). A defendant poses a greater risk of flight if he faces a severe sentence if convicted. *See Stanford*, 630 F. Supp. 2d at 755 (finding that "a daunting term of imprisonment of, up to, 375 months" weighs in favor of detention). Alnaimi is charged with transportation of child pornography. Dkt. 1. If convicted, as a first-time offender, he faces five to twenty years in federal prison. Dkt. 31 ¶ 5. Such a sentence increases the likelihood he would flee the court's jurisdiction prior to trial. *See Almasri*, 2007 WL 2964780, at *1 (finding potential ten-year sentences weighed in favor of detention).

The defense offers several arguments in favor of Alnaimi's release. First, the defense argues that "Alnaimi's citizenship does not point conclusively to a determination that he poses a risk of flight." Dkt. 27 ¶ 36. But Alnaimi's Qatari citizenship means that he is currently in the United States on a visa that expires in December. Dkt. 27-1 at 57:12–20; *see United States v. Casado-Hernandez*, No. 21-2091, 2021 WL 4344053, at *4 (10th Cir. Sept. 4, 2021) (permitting the consideration of immigration status to the extent there is a "risk a[] [non-citizen] will voluntarily flee to their country of

origin to evade a prosecution"). The looming expiration of his visa increases any incentive Alnaimi may have to attempt to flee.

Second, Alnaimi argues that the commitments of the Qatari Embassy would reduce his risk of flight. But the embassy's commitments cannot reasonably assure Alnaimi's appearance. A federal district court's authority to enforce the guarantees of a foreign representative is illusory. Such representatives are "an employee and agent of that government and can be removed and replaced at any time for myriad reasons or for no reason at all." *Kostadinov*, 572 F. Supp. at 1553; *see also United States v. Michelson*, 607 F. Supp. 693, 697 (E.D.N.Y. 1985) (refraining from considering the East German Ambassador's assurance since "Ambassadors serve at the pleasure of their government"). Here, the commitments of the Qatari Embassy's Deputy Chief of Mission are not ones that this court can rely upon when weighing whether to release the defendant on bond.

Even if the court could enforce the Qatari Embassy's guaranteed conditions, accepting the Qatari Embassy's two-million-dollar-cash bond as a condition of release is antithetical to the Bail Reform Act. "[A] wealthy defendant cannot avoid detention by relying on his personal funds to pay for private detention." *United States v. Boustani*, 932 F.3d 79, 82 (2nd Cir. 2019). Alnaimi seeks to rely on the Qatari Embassy's personal funds to pay

not just a two-million-dollar cash bond to the court, but also his third-party custodian for all of his living expenses. Because "the Bail Reform Act does not permit a two-tiered bail system in which defendants of lesser means are detained pending trial while wealthy defendants are released to self-funded private jails[,]" this proposed condition undermines the purpose of the court's detention system. *Id.*

The defense's third argument in favor of release is that the strong relationship between the U.S. and Qatar bolsters the import of the embassy's commitment. While notable, this fact is not sufficient to warrant release in this specific case. Even though Alnaimi rebutted the presumption of detention, "in making its ultimate determination, the court may still consider the finding by Congress that [perpetrators of violence against minors] pose a special risk of flight and dangerousness to society." *Hare*, 873 F.2d at 798–99. The statutory presumption carries great weight. *See Fortna*, 769 F.2d at 251. Accordingly, here, the Congressional determination that perpetrators of violence against minors should be detained negates any effect that the Qatari-American relationship could have on decreasing Alnaimi's flight risk.

For these reasons, the government has established by a preponderance of the evidence that Alnaimi's lack of familial or community ties to the United States, his extensive international travel, and his potential length of sentence

negate any conditions of release from reasonably assuring his appearance at trial, including those presumably guaranteed by the Qatari Embassy.

**C. Danger to the Community**

Because the government has established that "it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance," *Fortna*, 769 F.2d at 250, the court need not reach the question of whether Alnaimi "presents an identified and articulable threat to an individual or the community." *United States v. Salerno*, 481 U.S. 739, 751 (1987). The risk of flight is enough to compel his continued detention. *See Fortna,* 769 F.2d at 249 ("[T]he lack of reasonable assurance of *either* the defendant's appearance *or* the safety of others or the community is sufficient; both are not required." (emphasis added)).

* * *

For the foregoing reasons, the court finds Alnaimi to be a flight risk and denies Alnaimi's motion. Dkt. 27.

Signed on Galveston Island on this, the 7th day of October, 2026.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE